L. H. ELLIOTT and O. W. White v. JOHN CLEMANS and Louise Clemans.

(157 N. W. 822.)

**Real estate mortgage — action to foreclose — material alterations — defense of — trial de novo — questions of fact — evidence.**

Action to foreclose real estate mortgage. Defense: material alterations of the notes and mortgage; trial *de novo* in this court. The only question involved is whether the notes and mortgage in question were changed from $800 to $844.45, before or after their execution. The evidence is examined and *held* that the notes and mortgage in question had not been changed in any particular since their execution.

Opinion filed April 10, 1916.

Appeal from the District Court of LaMoure County, *Nuchols*, J. Affirmed.

*M. C. Lasell* and *S. E. Ellsworth,* for appellants.

When a showing is made by the opposite party to the effect that an intrinsic alteration is fraudulently made, the burden of sustaining it shifts to the party relying upon the altered instrument. Cass County v. American Exch. State Bank, 9 N. D. 263, 83 N. W. 12; First Nat. Bank v. Laughlin, 4 N. D. 391, 61 N. W. 473.

The certificate of a notary public has no greater sanctity in law than the unsupported oath of the notary who made it. "It may be contradicted or impeached by other competent evidence." 29 Cyc. 1094; Nicholson v. Snyder, 97 Md. 415, 55 Atl. 484; Turner v. St. John, 8 N. D. 245, 78 N. W. 340; Baumer v. French, 8 N. D. 319, 79 N. W. 340.

In such cases the rule that the proof must be "clear, strong, and convincing" has no application. Riley v. Riley, 9 N. D. 580, 84 N. W. 347.

*Hutchinson & Lynch,* for respondents.

Where it is claimed that a deed has been materially altered, the burden is on the party alleging such alteration, and his proofs must be clear, strong, and convincing. Riley v. Riley, supra.

33 N. D.—39.

The burden is upon the maker to show such alteration after execution and delivery. The proof or admission of the signature of a party to an instrument is prima facie evidence that the instrument written over the signature is his act, and will stand as binding proof until rebutted by evidence of the character stated. Moddie v. Breiland, 9 S. D. 506, 70 N. W. 637; Arnold v. Brechtel, 174 Mich. 147, 140 N. W. 610; Kleeb v. Bard, 12 Wash. 140, 40 Pac. 733.

The presumption of honesty is by no means so easily overcome that to say that a mere interlineation in a writing to correct an apparent mistake creates a fraudulent purpose or constitutes fraud. Maldaner v. Smith, 102 Wis. 30, 78 N. W. 140; Wilson v. Hayes, 40 Minn. 531, 4 L.R.A. 196, 12 Am. St. Rep. 754, 42 N. W. 467.

A certificate of acknowledgment of a deed or mortgage in proper form can be impeached only by clear, convincing, and satisfactory proof that it is false and fraudulent. Banking house of A. Castetter v. Stewart, 70 Neb. 815, 98 N. W. 34; Linde v. Gudden, 109 Wis. 326, 85 N. W. 323; Bennett v. Edgar, 46 Misc. 231, 93 N. Y. Supp. 203; Barrett v. Davis, 104 Mo. 549, 16 S. W. 377.

BURKE, J. Foreclosure of real estate mortgage. Defense, material alterations of the notes and mortgage. A trial anew is demanded in this court. Prior to March 15, 1904, the defendants, John and Louise Clemans, lived near Milford Center, Ohio. Upon said date they, with other colonists, moved to North Dakota, where they had purchased land from one C. C. Elliott. Part of the purchase price of the North Dakota farm is represented by the note and mortgage involved in this litigation, and the only question in dispute is whether said note and mortgage were changed from $800 to $844.45 before or after the same was signed. The evidence offered covers 198 pages of the statement of the case, and obviously cannot be reproduced in this opinion. The defendants admit signing the note and executing the mortgage, but both assert that the indebtedness was but $800. Mrs. Clemans denies that she appeared before the notary public at the time and place certified. On the other hand, plaintiffs' witnesses tell a straightforward story, in every way reasonable and convincing.

As an example we quote from the testimony of the notary public:

Q. I hand you a paper marked exhibit "B." You may state what it is.

A. It is a mortgage.

Q. Executed by whom?

A. By John Clemans and Louise Clemans.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

Q. You may state whether you ever saw that paper before.

A. I have.

Q. When and where?

A. Plain City.

Q. When?

A. The date here, March 5, 1904.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

Q. You may state whether that paper was all written out when you got it first?

A. Well, to a certain extent. I had to fill in some here.

Q. What part did you fill in?

A. 44 and 45/100.

Q. Now, then, look at the note and state what you filled in the note.

A. Same amount,—$44.45.

Q. You may state whether you filled in all that appears in black ink in the note and mortgage.

A. Yes, sir.

Q. You may state whether the mortgage and note, when they first came into your possession, were filled out with green ink?

A. Yes, sir.

Q. Why did you write the words, "forty-four and forty-five one-hundredths," in the mortgage and note?

A. By request.

Q. By whose request?

A. Why my recollection is—they had a conversation between Elliott and Mr. Clemans and that was to be written in and they sign the mortgage.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

Q. At whose direction did you write the $44.45 in?

A. With the consent of both of them.

Q. You may state whether you wrote the $44.45 in the note and mortgage before it was signed?

A. Yes.

Q. Do you remember whether you read the mortgage and note to Mr. and Mrs. Clemans before they signed it?

A. I do not recollect. I cannot say.

Q. You may state whether Mr. and Mrs. Clemans looked them over before they signed them?

A. Well, they laid on the table there—before them and I stood back.

Q. Now, what conversation was it that occurred there between Mr. and Mrs. Clemans and C. C. Elliott about this $44.45?

A. Well, they were talking there—I don't remember just what was said, but by their request I wrote this in.

Q. Were Mr. and Mrs. Clemans and C. C. Elliott all there present when they talked the matter over of writing the $44.45 in the note and mortgage?

A. Yes, sir. They were all there in the room.

Q. You may state whether at the bottom of the mortgage the "Mch." and "5" are in your handwriting?

A. Yes, sir.

Q. And at the top the name "Louisa Clemens?"

A. Yes.

Q. You may state whether the acknowledgment to the mortgage is all in your handwriting?

A. Yes, sir.

C. C. Elliott's explanation of the change is that the $800 represented a part of the purchase price of the land, while the $44.45 was one half of the freight upon the railroad car to North Dakota; that he telephoned to the station agent to ascertain the amount, and had the notary make the change, as already testified to by him. To the same effect is the testimony of the two witnesses to the mortgage, as well as other witnesses who were present at the time the acknowledgment was taken. The only point upon which there is the slightest room for doubt is the presence of Mrs. Clemans before the notary upon the 5th of March. Her testimony is that she signed the mortgage at Milford Center on the 15th of March just before leaving for North Dakota. The corroboration of her statement consists of the testimony of the depot agent that

she borrowed pen and ink of him to sign some papers. He does not, of course, know that it was the note or mortgage in question that she signed. There is also testimony of some of her neighbors that she was at a certain farm house 13 miles from Plain City upon the 5th of March, 1904. As this testimony was given in 1912, over eight years after the incidents, we believe the probability of said witnesses remembering the exact date and month to be very meager. As already intimated, all of the corroborating testimony offered by defendant could very easily be true, and yet, with the change of a day's date, have not the slightest bearing upon the controversy before us. As we have seen, the other disinterested testimony all favors plaintiff's version, and in addition we have the circumstance that the change made in the note was in an entirely different colored ink. It is unreasonable to believe that a forger would use black ink to raise a green-ink note. It is also unreasonable to believe that the holder of an $800 real estate mortgage would jeopardize the same by raising it in the paltry sum of $44.45. Moreover, no claim of forgery was ever made until this suit, eight years after the execution of the note, although there is much evidence that defendant John Clemans had been repeatedly notified that the amount was $844.45, and for said eight years the mortgage, stating the amount, was of record against his land. Of this much we feel absolutely certain,—the change in the note was made before it was signed by either of the defendants. Whether Mrs. Clemans signed it at Plain City on the 5th of March or at Milford Center on the 15th of March, she did so after the change had been made in the note, and with the intent to execute the papers and acknowledge them according to law. This finding of fact renders unnecessary a further discussion of this lawsuit. Judgment of the trial court is in all things affirmed.